# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ELIZABETH SCHACHT,<br>    Appellant, | DOCKET NUMBER<br>DE-1221-19-0041-W-6 |
| v. | |
| DEPARTMENT OF VETERANS<br>  AFFAIRS,<br>    Agency. | DATE:  May 14, 2024 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

J. Cathryne Watson, Esquire, and Caroline Whitlock, Esquire,
  Washington, D.C., for the appellant.

Robert C. Burlison III, Esquire, San Antonio, Texas, for the agency.

Rheanna Felton, Denver, Colorado, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which granted the appellant's request for corrective action in this individual right of action (IRA) appeal with respect to a negative proficiency report and performance pay but denied the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

request for corrective action regarding several other alleged personnel actions. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED to clarify the appropriate corrective action, we AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant was most recently employed with the agency as a Physician. *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-1, Initial Appeal File (IAF), Tab 1 at 1. In 2018, she filed a complaint with the Office of Special Counsel (OSC) alleging that the agency had engaged in whistleblower reprisal by taking a number of personnel actions against her. *Id*. at 85-86. After OSC closed its investigation, the appellant filed the instant IRA appeal. *Id*. at 1-5. Over the next several years, the administrative judge dismissed and then re-docketed the appeal multiple times as the parties developed the voluminous written record. IAF, Tab 116; *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-2, Appeal File (W-2 AF), Tab 80; *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-

19-0041-W-3, Appeal File (W-3 AF), Tab 11; *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-4, Appeal File, Tab 11; *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-5, Appeal File, Tab 7; *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-6, Appeal File (W-6 AF), Tab 1.

¶3    Based on the written record,[2] the administrative judge determined that the appellant presented nine alleged disclosures and nine alleged retaliatory personnel actions, i.e., Disclosures 1-9 and Personnel Actions 1-9. IAF, Tab 20 (recognizing eight alleged disclosures and eight alleged personnel actions), Tab 46 (recognizing a ninth alleged disclosure and a ninth alleged personnel action). He found that the appellant met the exhaustion requirement and presented the requisite nonfrivolous allegations to establish jurisdiction over all but Disclosure 3 and Personnel Action 3.[3] IAF, Tab 46. Disclosures 1-2 and 4-9 covered a number of topics, such as scheduling and staffing, diversion of controlled substances, inadequate care, and unsafe clinical practices. *E.g.*, W-6 AF, Tab 32, Initial Decision (ID) at 7-8. Personnel Actions 1-2 and 4-9 ranged from a change in duties to the suspension of clinical privileges and removal from service. ID at 8-9.[4]

¶4    Turning to the merits of her claims, the administrative judge found that the appellant proved by preponderant evidence that Disclosures 4-7 and 9 were protected.[5] ID at 12-14, 16-17. He then found that the appellant proved by preponderant evidence the existence of Personnel Actions 4 and 6-8, and that they

---

[2] The appellant waived her right to a hearing. W-6 AF, Tab 3 at 1.

[3] According to the appellant, Disclosure 3 was one in which she revealed that she was assigned to supervise new residents, which was a deviation from internal policy, while Personnel Action 3 concerned officials soliciting negative reports about the appellant from others. IAF, Tab 20 at 4-5, 7. The administrative judge found that the appellant did not present nonfrivolous allegations for Disclosure 3 and did not prove the exhaustion element for Personnel Action 3. *Id*. at 7, 11-13. He therefore found that the Board lacked jurisdiction over those matters. *Id*.

[4] As will become apparent, only some of these alleged disclosures and personnel actions remain disputed, so we need not recount them in their entirety.

were the kinds of personnel actions covered under the whistleblower protection statute.[6] ID at 23-27. The administrative judge next considered the contributing factor requirement. He found that the appellant proved that Disclosures 4-5 were a contributing factor in Personnel Actions 4 and 6-8, while Disclosure 9 was a contributing factor to just Personnel Action 8.[7] ID at 31-32.

¶5　　For those claims for which he found that the appellant presented a prima facie case of reprisal—Disclosures 4-5 and 9, and Personnel Actions 4 and 6-8—the administrative judge shifted the burden to the agency to show by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected disclosures. He found that the agency proved that it would have taken Personnel Actions 4, 6, and 8 in the absence of the appellant's whistleblowing. ID at 36-52. However, he found that the agency failed to meet its burden as to Personnel Action 7. ID at 52-57. Consequently, the administrative judge granted corrective action regarding that personnel action. ID at 57.

¶6　　The agency has filed a petition for review. *Schacht v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-19-0041-W-6, Petition for Review (PFR) File, Tab 4. The appellant has filed a response to the agency's petition, PFR File, Tab 18, and the agency replied, PFR File, Tab 20. The appellant has

---

[5] Conversely, the administrative judge found that the appellant did not meet her preponderant evidence burden for Disclosures 1, 2, and 8. ID at 9-12, 15-16. He determined that the appellant did not prove that the alleged disclosures were protected, but also that the appellant did not prove them as a factual matter. *Id*.

[6] Conversely, the administrative judge found that the appellant did not prove by preponderant evidence that Personnel Action 1 was a qualifying personnel action under the statute or prove it as a factual matter. ID at 17-19. He found that Personnel Action 2 was not a qualifying personnel action, ID at 19-23, and that the appellant did not prove Personnel Action 5 as a factual matter, ID at 24-26. For Personnel Action 9, the administrative judge found that the appellant failed to prove wrongdoing that amounted to a hostile work environment and covered personnel action. ID at 27-29.

[7] The administrative judge concluded that the appellant did not prove that Disclosures 6-7 were a contributing factor to any personnel action. ID at 32-35.

filed a cross petition for review. PFR File, Tab 17. The agency has filed a response to the appellant's cross petition for review.[8] PFR File, Tab 21.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7     Under the Whistleblower Protection Enhancement Act of 2012, the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Williams v. Department of Defense*, 2023 MSPB 23 ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Once an appellant establishes jurisdiction over her IRA appeal, she must prove her claim by preponderant evidence. *Williams*, 2023 MSPB 23, ¶ 8; *Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶8     If the appellant proves, by preponderant evidence, that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. *Turner v. Department of Agriculture*, 2023 MSPB 25, ¶ 12; *Salerno*, 123 M.S.P.R. 230, ¶ 5. In making that determination, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes

---

[8] The appellant filed a motion asking for permission to submit a reply brief concerning her cross petition for review and the agency's response. PFR File, Tab 25. That request is denied. *See* 5 C.F.R. § 1201.114(a) (listing the pleadings allowed on review and noting that no other pleading will be accepted unless the Board grants leave for the additional pleading).

similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1322-23 (Fed. Cir. 1999); *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 24. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Karnes*, 2023 MSPB 12, ¶ 24.

¶9 The arguments presented on review are numerous but limited to the following alleged disclosures and personnel actions: the appellant reasserts that Disclosures 1, 2, and 8 were protected, and she disputes the administrative judge's conclusion that the agency rebutted her prima facie case of reprisal for Personnel Actions 6 and 8. PFR File, Tab 17. Meanwhile, the agency argues that the administrative judge erred regarding his grant of corrective action for Personnel Action 7. PFR File, Tab 4. Because it makes more analytical sense, we have largely addressed the arguments raised in the appellant's cross petition for review before addressing the agency's petition for review.

### The administrative judge correctly found that the appellant did not show by preponderant evidence that Disclosures 1, 2, and 8 were protected.

¶10 The administrative judge found that the appellant did not meet her burden of proof for Disclosure 1, ID at 9-10, Disclosure 2, ID at 10-12, or Disclosure 8, ID at 14-16, which have the common thread of involving disclosures about personnel scheduling or attendance. The appellant disagrees. PFR File, Tab 17 at 18-23.

¶11 A protected disclosure is one which the employee "reasonably believes evidences: (i) any violation of any law, rule, or regulation; or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). The proper test for determining whether an employee had a reasonable belief that her disclosure was protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could

reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 14. The disclosures must be specific and detailed, not vague allegations of wrongdoing. *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6.

¶12 Given the nature of the appellant's assertions on review, we additionally note the following about the types of disclosures that are protected under the statute. For an alleged disclosure about a substantial and specific danger to public health or safety, the Board must consider the following to determine whether a disclosed danger is substantial and specific enough to warrant protection under the whistleblower protection statute: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences. *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010). For an allegation of gross mismanagement to be protected, the matter disclosed must be more than de minimis wrongdoing or negligence; the matter disclosed must be a management action or inaction that creates a substantial risk of a significant adverse impact on the agency's ability to accomplish its mission. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24.

*Disclosure 1*

¶13 The administrative judge characterized Disclosure 1 as one involving an allegation that the appellant informed her Deputy Chief of Staff, on July 25, 2017, that a particular physician was providing fraudulent information to Human Resources, falsely claiming that he was still working in a particular unit. ID at 7, 9. But the administrative judge found that the emails and deposition testimony the appellant cited in support of this allegation did not prove that the appellant made any such disclosure. ID at 9-10 (referencing W-2 AF, Tab 15 at 6-7, 13; W-6 AF, Tab 18 at 115-17). Consequently, the administrative judge concluded that the appellant did not prove Disclosure 1 as a factual matter. ID at 10. He

also concluded that the alleged disclosure was too vague to be protected under the statute. *Id*.

¶14    On review, the appellant characterizes Disclosure 1 somewhat differently than the administrative judge, alleging that she revealed a physician's failure to fulfill his duties, critical staffing shortages, and a risk that the agency would lose a certain accreditation. PFR File, Tab 17 at 19. She directs us to several pieces of evidence. *Id*. at 19-20 (referencing W-2 AF, Tab 14 at 30-48, 54, Tab 15 at 6-7, 13, 15-17, 28, Tab 16 at 4-8; W-6 AF, Tab 18 at 109, 116-17). However, we do not find that this evidence warrants a different result. Most notably, the referenced evidence shows that a colleague accepted a move into a new position as of July 23, 2017, W-2 AF, Tab 14 at 30-48, Tab 15 at 15-16, that the appellant sent a letter a couple of days later, citing this, a broader staff shortage, and other considerations as she requested appointment to interim chief of her unit, W-2 AF, Tab 15 at 6-7, 13, and that the appellant's colleague expressed various administrative and staffing concerns about the unit in August 2017, while there was ongoing confusion about whether he could change positions, W-2 AF, Tab 15 at 28, Tab 16 at 4-7. None of this demonstrates that the appellant made a protected disclosure.

¶15    Although the appellant disclosed her general belief that the departure of her colleague would add to the unit's understaffing and may threaten a certain accreditation for the unit, her message contains little in terms of detail. W-2 AF, Tab 15 at 6-7, 13. The disclosure was speculative and nonspecific. *See Herman v. Department of Justice*, 193 F.3d 1375, 1378-80 (Fed. Cir. 1999) (finding that a psychologist did not disclose a substantial and specific danger to public safety under the Whistleblower Protection Act when he speculated that the prison camp's failure to have a suicide watch room on the premises was potentially dangerous for suicidal inmates), *abrogated on other grounds by Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372 n.1 (Fed. Cir. 2001). The appellant did not, for example, indicate that her departing colleague would not be

replaced, nor did she disclose that understaffing had already or was likely to result in imminent or significant harm to patients. *Cf. Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 37-40 (finding that an appellant reasonably believed she disclosed a substantial and specific danger to public health and safety when she revealed equipment breakdowns that prevented medical equipment from being sterilized in a timely manner); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 19-20 (2013) (reaching the same conclusion regarding a disclosure that medical carts were not cleaned and restocked at shift change because harm could result directly from delays in providing immediate treatment or careful monitoring to patients who needed it). We are therefore not persuaded by the appellant's assertion that Disclosure 1 was protected because it revealed her reasonable belief of a substantial and specific danger to public health or safety. PFR File, Tab 17 at 19-20. We are similarly unpersuaded by the appellant's cursory suggestion that this disclosure also revealed false documentation on the part of the departing colleague about his duty status within their unit. PFR File, Tab 17 at 20. While other correspondence from other officials calls into question his duty status and availability to transfer from one position to another, the appellant has not pointed us to any evidence showing she disclosed this or anything similar that might rise to the level of a protected disclosure. W-2 AF, Tab 15 at 6-7, 13.

*Disclosure 2*

¶16    For Disclosure 2, the appellant alleged that she informed her Deputy Chief of Staff, on or around July 25, 2017, that her colleagues had created a fraudulent schedule falsely indicating that they were providing clinical care when they were not. ID at 7, 11. But the administrative judge found that the associated evidence the appellant relied upon did not prove that she actually made such a disclosure. ID at 11-12 (referencing W-2 AF, Tab 15 at 8; W-6 AF, Tab 18 at 15, 135-40). He concluded that the appellant did not prove that she made Disclosure 2, and that, in any event, the alleged disclosure was too vague to be protected. ID at 12.

¶17      On review, the appellant argues that she disclosed her colleagues' misleading schedule, and that the administrative judge relied too heavily on the absence of the words "fraud" or "falsehood" in finding that her disclosure was not proven as a factual matter or that it was not protected. According to the appellant, her disclosure speaks for itself, without the inclusion of those words. PFR File, Tab 17 at 21-22 (referencing W-2 AF, Tab 15 at 8-12, Tab 17 at 12, Tab 21 at 91, 107; W-6 AF, Tab 18 at 135-36, 195-248). We disagree.

¶18      We have reviewed the administrative judge's findings, along with all the appellant's arguments and referenced evidence on review, but we find no reason to conclude that the administrative judge erred on this point. The limited evidence we located regarding Disclosure 2 seems to show that the appellant verbally spoke to an agency official about staffing in her unit, including something the appellant identified as an anomaly. But the recipient of this information testified that he did not even understand what the appellant was talking about at the time. W-6 AF, Tab 18 at 135-36. And the document the appellant claims to have provided him is mostly just a list of dates and names, without explanation. W-2 AF, Tab 15 at 8-12. The appellant has referred us to other evidence, spanning the year after what she alleged as Disclosure 2, which shows that other officials discussed policy requirements about scheduling and their conclusion that some physicians violated those policies. W-2 AF, Tab 17 at 12, Tab 21 at 91, 107. However, the appellant has not proven that she disclosed the same. She has not, for example, directed us to any sworn testimony by her or others indicating that her July 2017 interaction with the Deputy Chief of Staff included her alleging the same kinds of policy violations later identified by other agency officials.

*Disclosure 8*

¶19      For Disclosure 8, the appellant alleged that she provided management with a copy of emails, on or around April 11, 2018, further demonstrating that her colleagues had engaged in a fraudulent staffing scheme. ID at 8, 15. But the

administrative judge found that the evidence the appellant relied upon did not prove that she made the disclosure alleged. ID at 15-16 (referencing W-2 AF, Tab 21 at 5-9, 13-42). He further found that the alleged disclosure was too vague to be protected. ID at 16.

¶20      On review, the appellant argues that the administrative judge erred in finding Disclosure 8 unproven and not protected. PFR File, Tab 17 at 22-23 (referencing W-2 AF, Tab 17 at 12-13). As with the previous disclosures, we are unpersuaded. The evidence to which the appellant has referred on review are emails from other agency officials about scheduling policies. W-2 AF, Tab 17 at 12-13. They are not emails or other evidence showing that the appellant made a disclosure, or that she relayed someone else's disclosure.

¶21      More broadly, the appellant's arguments about Disclosures 1, 2, and 8 are unavailing for similar reasons. The record before us demonstrates that the appellant raised some general staffing and scheduling concerns. It also shows that, at some point, other officials concluded that physicians had not been following certain scheduling policies. However, the appellant has not pointed us to evidence proving that she disclosed this or anything else that rose to the level of a protected disclosure under the whistleblower protection statute.

<u>The appellant has not shown error in the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have taken Personnel Actions 4, 6, and 8 in the absence of the appellant's protected disclosures.</u>

¶22      To recall, the administrative judge found that the appellant presented a prima facie case of reprisal regarding Disclosures 4, 5, and 9, and Personnel Actions 4 and 6-8. ID at 31-32. He then found that the agency rebutted that prima facie case of reprisal for Personnel Actions 4, 6, and 8, ID at 35-52, but not Personnel Action 7, ID at 52-57. In her cross petition for review, the appellant challenges just the administrative judge's conclusion as to Personnel Actions 6 and 8. She does not challenge the administrative judge's conclusion as to

Personnel Action 4. Our analysis will focus on the personnel actions raised on review and the appellant's arguments regarding those personnel actions.

¶23    For the sake of context, Disclosures 4, 5, and 9 include an August 2017 letter from the appellant and many others expressing concern that a particular nurse might be diverting controlled substances, the appellant's December 2017 complaint that a colleague was depriving patients of essential lab work and pain medication, and an April 2018 letter in which the appellant responded to an investigation about her conduct with assertions that other anesthesiologists were engaging in unsafe clinical practices.[9] ID at 7-8, 12-13, 16-17. Meanwhile, Personnel Action 6 was the February 2018 suspension of the appellant's privileges, and Personnel Action 8 was her August 2018 removal from service. ID at 9, 26-27.

¶24    For additional context, it is worth noting that the appellant challenged the revocation of her privileges and her removal from service through an internal Disciplinary Appeals Board (DAB) while simultaneously pursuing this IRA appeal. W-3 AF, Tab 5 at 11-18. Long before the initial decision in this IRA appeal, the DAB collected evidence, held a hearing, and issued the DAB decision, which concluded that each of the agency's allegations were substantiated. *Id*. The DAB recommended upholding the agency's decisions to revoke the appellant's privileges and remove her from service. *Id*.

¶25    The evidence in this appeal largely consists of the evidence collected and considered by the DAB. The administrative judge relied on the same as he found that the agency rebutted the appellant's prima facie case of reprisal for Personnel Action 6, ID at 39-44, and Personnel Action 8, ID at 45-52.

¶26    Among other things, the administrative judge concluded that the evidence in support of Personnel Action 6 was strong because it showed that the agency suspended the appellant's privileges in response to an unprecedented number of complaints about various aspects of her conduct from a wide range of sources.

---

[9] The April 2018 letter was prepared by the appellant's attorney.

This included complaints from 16 medical residents at the University of Colorado, which resulted in the University's December 2017 decision to no longer allow the appellant to supervise its medical residents. ID at 40 (referencing, *e.g.*, W-2 AF, Tab 36 at 132-33; W-6 AF, Tab 12 at 18). The administrative judge reached a similar conclusion about the strength of the evidence in support of Personnel Action 8, finding that each specification underlying the appellant's removal was supported by extensive evidence ranging from the sworn statements of numerous colleagues to the appellant's own admissions. ID at 45-52 (referencing, *e.g.*, W-6 AF, Tab 12 at 20-21, 59-62, 227, 260). The administrative judge also determined that the agency had some limited motive to retaliate for the appellant's whistleblowing, ID at 40, 51, and that the record was devoid of evidence regarding any similarly situated nonwhistleblowers for purposes of comparison, ID at 41-44, 51.

¶27 On review, the appellant disagrees with the administrative judge's conclusion that the agency met its burden regarding Personnel Actions 6 and 8. Her arguments include ones about new evidence and res judicata, PFR File, Tab 17 at 9-11, the strength of the agency's evidence, *id*. at 26-32, and similarly situated nonwhistleblowers, *id*. at 12-17, 23-26.

*New evidence and res judicata*

¶28 The appellant's first argument regarding the administrative judge's conclusion that the agency met its clear and convincing evidence burden is that the administrative judge failed to consider new and material evidence she submitted after the close of record but before the initial decision's issuance. PFR File, Tab 17 at 9-11 (referencing W-6 AF, Tab 30).[10] According to the appellant, that evidence shows that the Colorado Medical Board considered, but rejected, the

---

[10] The close of record for this appeal was set for March 25, 2022. W-6 AF, Tab 10 at 1. The documents the appellant is relying on for this argument are decisions by the Colorado Medical Board in the months that followed that date. W-6 AF, Tab 30. So, the appellant is correct to identify that evidence as evidence that was unavailable at the time the record closed.

same allegations underlying Personnel Actions 6 and 8 in a proceeding regarding the revocation of the appellant's medical license. *Id*. The appellant argues that this warrants a conclusion contrary to the ones reached by the administrative judge, who found that the evidence in support of those personnel actions was strong. *Id*. (referencing ID at 40, 45-51). She further argues that we should apply res judicata to Personnel Actions 6 and 8 based on the Colorado Medical Board decision. *Id*. at 11-12.

¶29    We acknowledge that the initial decision does not mention the Colorado Medical Board decision. However, the fact that the administrative judge did not mention all the evidence does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). In any event, even if the administrative judge should have but failed to consider this evidence, which was submitted after the scheduled close of record, we are not persuaded that it warrants a different result.

¶30    The evidence shows that the agency permanently revoked the appellant's clinical privileges for alleged wrongdoing, W-6 AF, Tab 30 at 13-15, that the Colorado Medical Board received notice of this and gave the appellant an opportunity to respond for purposes of her medical license in October 2022, *id*. at 9-12, and that the Colorado Medical Board dismissed the matter in December 2022, citing "insufficient grounds to warrant the commencement of formal disciplinary proceedings as required by the provisions of Colorado law," *id*. at 17.[11] The Colorado Medical Board's dismissal did not provide further comment or analysis. *Id*. It did not, for example, substantively discuss the allegations or describe whether it reviewed any associated evidence. *Id*.

¶31    Without more, it seems that the Colorado Medical Board summarily dismissed the matter because it had little or no evidence aside from the document

---

[11] The evidence seems to indicate that the Colorado Medical Board followed these same steps and reached the same conclusion once before, in 2021, regarding some of the same alleged wrongdoing. W-6 AF, Tab 30 at 19-24.

indicating that the appellant lost her privileges, as compared to the DAB and the administrative judge in this IRA appeal, who had extensive evidence to consider. Thus, while the appellant suggests that the Colorado Medical Board decision requires a particular result in this whistleblower reprisal appeal, we disagree. It does not persuade us that the administrative judge erred in finding that the agency's evidence in support of Personnel Actions 6 and 8 was strong.

¶32    We are also unmoved by the appellant's invocation of res judicata. Among other things, the appellant has not given us any basis to conclude that the Colorado Medical Board decision was one on the merits or that the agency was a party or privy in the matter. For those reasons, res judicata is inapplicable. *See Peartree v. U.S. Postal Service*, 66 M.S.P.R. 332, 337 (1995) (recognizing that res judicata precludes parties from relitigating issues that were, or could have been, raised in the prior action, and is applicable if: (1) the prior judgment was rendered by a forum with competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases).

*Strength of the agency's evidence*

¶33    The appellant next presents a handful of arguments that implicate the first *Carr* factor under the agency's burden, i.e., the strength of the agency's evidence in support of Personnel Actions 6 and 8. PFR File, Tab 17 at 26-29. This includes assertions that the agency did not prove the allegations underlying her removal, *id*. at 29-31, and that the administrative judge did not properly analyze the penalty of removal, *id*. at 31-32.

¶34    To illustrate, the appellant describes a number of actions the agency could have taken to counsel or otherwise support her, short of suspending her privileges and removing her from service. *Id*. at 27-28. She also contends that the agency violated internal procedures involving the timeliness of it reviewing her suspension of clinical privileges. *Id*. at 28. In another example, the appellant disputes the allegations underlying her removal by referring us to discrete

passages from the DAB decision, such as ones in which the DAB indicated that the appellant "doesn't lack competence." *Id*. at 29-31 (referencing, *e.g.*, W-3 AF, Tab 5 at 11). But the appellant's arguments are not especially persuasive, especially when viewed in light of the DAB's conclusion that the allegations levied against the appellant were substantiated, that the appellant should have her privileges revoked, and that she should be removed from service. Although we have considered each of the appellant's arguments as to the strength of the agency's evidence in support of its personnel actions, we are unmoved. We instead agree with the administrative judge's thorough and well-reasoned analysis, some of which we discussed above, which found that the agency's evidence in support of Personnel Actions 6 and 8 was quite strong. ID at 39-40, 44-51.

*Comparators*

¶35    The appellant next disputes the administrative judge's conclusion that a certain colleague was also a whistleblower and therefore not an appropriate comparator for purposes of the agency's burden under the third *Carr* factor, PFR File, Tab 17 at 13-16, 23-25, and she argues that the administrative judge erred by denying a motion to compel regarding evidence about that issue, *id*. at 16-17. These arguments are also not persuasive. The administrative judge concluded that the referenced colleague was not a valid comparator for the third *Carr* factor because the colleague had engaged in whistleblowing, just like the appellant. ID at 41; *see Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (finding that the Board erred in considering the treatment of similarly situated whistleblowers under the third *Carr* factor). But he nevertheless discussed this colleague's alleged misconduct and found that, even if considered as a comparator, the circumstances of that individual's employment and separation from the agency would not warrant a different result. ID at 41-43, 51-52. We discern no basis for deciding otherwise.

¶36    The appellant has gone to great lengths to argue that this colleague's disclosures would not be protected under the whistleblower statute, and to imply that the colleague was treated more favorably because "the [a]gency never revoked his privileges or removed him." PFR File, Tab 17 at 17, 23-25. However, on the latter point, there is more to the story than the appellant has acknowledged. Among other things, the agency suspended this colleague of the appellant in 2018 based on one inappropriate interaction with a coworker, it suspended his privileges in 2019 after a complaint involving patient care, and the colleague then resigned in 2020 as management officials began the process to remove him. W-2 AF, Tab 20 at 7; W-6 AF, Tab 13 at 364. So, even if we were to agree with the appellant's arguments that this colleague was not a whistleblower and is a valid comparator for *Carr* factor three, the appellant has not established that the agency's treatment of him would meaningfully detract from the conclusion that it would have suspended the appellant's privileges and removed her in the absence of her whistleblowing. Nor has the appellant shown that the administrative judge abused his discretion by denying the appellant's motion to compel additional evidence beyond that which the agency had already provided about this and any other potential comparator. *See Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992) (holding that the Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table).

¶37    The appellant separately argues that the administrative judge erred by rejecting several other nonwhistleblowers as comparators for purposes of the third *Carr* factor based on the dissimilarity between their misconduct and that of the appellant. PFR File, Tab 17 at 12-13, 16, 25-26. But the appellant has not substantively and persuasively shown that these were valid comparators or that the administrative judge erred in his analysis of at least 10 individuals that the parties had identified for consideration. *See* W-2 AF, Tab 72 at 10-14. To illustrate, the appellant's petition summarily states that the conduct underlying

the suspension of her privileges and her removal from service was common for all anesthesiologists. PFR File, Tab 17 at 12, 16. Yet the appellant has not directed us to any supportive evidence. The appellant also states that no other clinicians who lost their authority to supervise medical residents suffered the same suspension of privileges and removal from service that she did. *Id*. at 16. But again, she has not pointed us to any substantive evidence about those individuals. Without more, the appellant has not established that the administrative judge erred with respect to comparator nonwhistleblowers. More broadly, she has not shown that the administrative judge erred in finding that the agency met its burden of rebutting her prima facie case of reprisal for Personnel Actions 6 and 8.

The administrative judge correctly considered the appellant's performance pay in concert with Personnel Action 7.

¶38 The agency's petition for review argues that the administrative judge erred by granting corrective action regarding performance pay in concert with Personnel Action 7 because the appellant did not exhaust the matter with OSC and because the administrative judge did not make a jurisdictional finding about any such claim. PFR File, Tab 4 at 25-31. The agency further argues that the administrative judge's order of corrective action must be reversed because it was based in part on an erroneous finding that the agency had not already provided the appellant with performance pay for the relevant period. *Id*. at 31-33. In support of this latter argument, the agency submitted evidence that it asks the Board to consider for the first time on review. *Id*. at 33-34. Put more simply, the agency's argument is twofold: the appellant's performance pay was not properly before the Board for adjudication, and even if it was, the agency already provided her with that performance pay.

¶39 As mentioned above, to establish Board jurisdiction over an IRA appeal, an appellant must prove by preponderant evidence that she exhausted administrative remedies with OSC before seeking corrective action from the Board. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. An appellant may

demonstrate exhaustion through their initial OSC complaint, other correspondence with OSC, or other sufficiently reliable evidence, such as an affidavit or declaration. *Id.*, ¶ 11. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Id.*, ¶ 10. The purpose of the exhaustion requirement is to give OSC the opportunity to take corrective action before involving the Board in the case. *Id.* Thus, the Board's jurisdiction in an IRA appeal is limited to those issues that have been raised with OSC. *Id.*

¶40     The administrative judge first identified Personnel Action 7 as the agency's request that the appellant sign a negative proficiency report. He initially found that the appellant did not exhaust this claim with OSC. IAF, Tab 20 at 8. But the administrative judge later reversed course, based on some correspondence the appellant submitted between herself and OSC. IAF, Tab 35 at 6 (referencing IAF, Tab 16 at 56, Tab 17 at 4). That correspondence explicitly discussed a proficiency report that the appellant characterized as "fraudulent" and "defamatory," but it makes no mention of performance pay or awards. IAF, Tab 16 at 56. However, while analyzing Personnel Action 7 in the initial decision, the administrative judge recognized that testimony from two agency officials indicated that the proficiency report is what the agency uses to determine physician performance pay. ID at 52 (referencing W-6 AF, Tab 12 at 847, 1013).

¶41     The agency argues that there is a meaningful distinction between the negative proficiency report and the performance pay that the administrative judge implicitly found to be one and the same for purposes of exhaustion with OSC and Board jurisdiction. PFR File, Tab 4 at 27-28. The agency further argues that, although the appellant may have raised her proficiency report with OSC, she did not raise her performance pay with OSC, so the Board lacks jurisdiction to grant corrective action regarding the latter. *Id.* at 28-29.[12]

_____

[12] While the appellant has filed a response to the agency's petition, she has not substantively responded to this argument. The appellant has not, for example, referred us to any other correspondence in which she raised the issue of performance pay with

¶42     As further detailed in the initial decision, the appellant's supervisor completed the appellant's fiscal year 2017 (FY 17) proficiency report on October 31, 2017, rating her performance as "low satisfactory." W-2 AF, Tab 45 at 5-6. This is the report the appellant described to OSC as "fraudulent," "defamatory," and not given to her until much later, on March 15, 2018. IAF, Tab 16 at 56-57, 86-87; W-6 AF, Tab 18 at 42. The appellant's supervisor also completed and signed a performance pay form, dated November 7, 2017, recommending that the appellant's performance pay be set at $12,750. W-2 AF, Tab 45 at 8; W-6 AF, Tab 12 at 1027-30. But the form is not signed by the "approving official." W-2 AF, Tab 45 at 8. Thus, it seems that the form was not further acted upon, at least not at that time.

¶43     Months later, on March 27, 2018, a new supervisor was in place and completed a new performance pay form for FY 17, recommending that the appellant receive no performance pay, "based on FY 17 [p]roficiency." W-2 AF, Tab 45 at 7. On this form and elsewhere, he explicitly cited the prior supervisor's proficiency report, stating that it "seems to preclude any" pay for performance, despite the prior supervisor's recommendation for performance pay. W-2 AF, Tab 20 at 50, 81-83. Unlike the earlier one, the March 27, 2018 performance pay form is signed by an approving official. W-2 AF, Tab 45 at 7.

¶44     To the agency's point, it is true that the appellant complained to OSC about the October 2017 proficiency report by her original supervisor, without mentioning either of the two performance pay forms that followed. *Compare* IAF, Tab 16 at 56-57, 86-87, *with* W-2 AF, Tab 45 at 7. But it is also true that the appellant's description to OSC about the proficiency report included her complaint that she only received that report in March 2018, which coincides with the second performance pay form indicating that she should receive no

_____

OSC, nor has she articulated how the proficiency report and performance pay might be related. PFR File, Tab 18 at 4-5. Instead, the appellant summarily states that the administrative judge reached the correct conclusion on this issue, and that we should affirm the finding. *Id*.

performance pay. IAF, Tab 16 at 56-57. And while the agency has attempted to cast them as wholly separate, PFR File, Tab 4 at 27-28, the agency's argument does not point us to any convincing evidence that would counter the evidence indicating that the recommended denial of performance pay was based upon the appellant's proficiency report, W-2 AF, Tab 20 at 50, 81-83; W-6 AF, Tab 12 at 847, 1013.

¶45    Under these circumstances, we are not persuaded by the agency's argument about exhaustion and Board jurisdiction. The appellant undoubtedly raised the issue of her delayed proficiency report with OSC, and the evidence of record supports a conclusion that her performance pay was inextricably tied to the same. In a somewhat comparable situation, the Board found that an appellant exhausted his claim about a performance evaluation being held in abeyance. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶¶ 4, 9-10 (2016). When the Board granted corrective action in *Scoggins*, it ordered the agency to issue the performance evaluation along with any resulting awards, bonuses, or similar items that result from the performance evaluation. *Id.*, ¶¶ 1, 48. We discern no basis for concluding that the situation at hand is meaningfully different, given the hearing testimony that evaluations are used to determine awards. *See, e.g.*, *Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 19 (2016) (explaining that corrective action in an IRA appeal may include status quo ante relief, such as cancellation of the retaliatory personnel action; back pay; interest on back pay; and other employment benefits that an employee would have received had the retaliatory action not occurred); *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶¶ 49-51 (2013) (granting corrective action as to a performance rating and ordering an agency to provide an employee with pay or other relief such that they are placed as nearly as possible in the same situation the employee would have been in had the agency not retaliated).

¶46    We recognize the agency's separate but related argument that it was unaware that the administrative judge would consider Personnel Action 7 to

encompass both the proficiency report and the associated performance pay. PFR File, Tab 4 at 29-31. Among other things, the agency asserts that the administrative judge did not explicitly describe Personnel Action 7 as including the performance pay issue. *E.g.*, IAF, Tab 35 at 6; ID at 9. However, we remain unpersuaded.

¶47 For the reasons described above, regarding the exhaustion element for Board jurisdiction, we find the proficiency report and performance pay inextricably tied, such that the agency should not have been surprised that the administrative judge would consider both. In furtherance of this conclusion, we note that the appellant raised the issue of the performance pay associated with her proficiency report by at least February 2020, nearly 3 years before the initial decision's issuance. W-2 AF, Tab 11. She did so again in her opening brief. W-6 AF, Tab 18 at 42-43. The agency recognized as much. Among other things, the agency's closing brief described the circumstances surrounding the FY 17 proficiency report and performance pay, together. W-6 AF, Tab 17 at 44-46. While that closing brief asserted that the agency would only address the FY 17 proficiency report on the merits because the issue of FY 17 performance pay was not exhausted before OSC and not within the scope of Personnel Action 7, the agency did so at its own peril. *Id*. at 45 n.12, 46 n.13, 73.[13]

The administrative judge was correct to grant corrective action for Personnel Action 7, but he erred with respect to the specific corrective action ordered.

¶48 The administrative judge applied the proper analytical framework for Personnel Action 7. ID at 53-58. He found that the first *Carr* factor weighed in favor of the appellant because, although the evidence in support of the October 2017 proficiency report may have been strong, the explanations for delaying its

---

[13] When the appellant submitted her closing brief, she again discussed the issue of the performance pay recommendations while arguing that her proficiency report was illegitimate and retaliatory. W-6 AF, Tab 18 at 86-87. In response to the agency's closing brief, the appellant further argued that she was "arbitrarily denied" performance pay, citing the March 2018 recommendation that she receive no performance pay. W-6 AF, Tab 22 at 46 (referencing W-2 AF, Tab 20 at 85).

issuance until many months later was not. ID at 52-56. He further found that the second *Carr* factor also weighed in favor of the appellant, though only slightly, and that the third *Carr* factor weighed in favor of the agency. ID at 56-57. Considered together, the administrative judge concluded that the agency had not met its burden. *Id*. He therefore granted corrective action, ordering the agency to "cancel the March 15, 2018 proficiency report (which awarded $0 pay for performance)," replace it with the "original October 31, 2017 proficiency report (which recommended $12,750 pay for performance)," and "award the appellant $12,750 in pay for performance." ID at 57.

¶49    As alluded to above, the agency argues on review that it had already paid the appellant her FY 17 performance pay. We agree and modify the ordered corrective action accordingly.

¶50    During its closing brief before the administrative judge, the agency indicated that it had already processed the original performance pay recommendation and provided the appellant with FY 17 performance pay. W-6 AF, Tab 17 at 46 n.13. At that time, the agency stated that it would not be submitting associated evidence since it seemed irrelevant and unchallenged, and to avoid adding to an already voluminous record. *Id*.

¶51    Given the administrative judge's grant of corrective action and associated orders, which included $12,750 in FY 17 performance pay, the agency has now submitted the evidence to which it previously referred, for the first time on review. This includes, inter alia, an SF-50 and associated payroll records indicating that the appellant received $12,000 in FY 17 performance pay, effective March 2018. *Id*. at 177, 185-86. The evidence also shows that an agency official had set a limit of $12,000 for all physicians at the appellant's facility, which would explain the difference between the November 7, 2017 recommendation of $12,750 in performance pay and the $12,000 given. *E.g., id*. at 16-18, 197-98, 249-52.

¶52     In her response to the agency's petition, the appellant does not argue that the $12,000 in FY 17 performance pay was not received, nor does she dispute the difference between that amount and the $12,750 that her supervisor originally recommended. PFR File, Tab 18. She does, however, object to the new evidence on the basis that it was not submitted during the proceedings below. *Id*. at 5 n.1.

¶53     Under 5 C.F.R. § 1201.115(d), the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. But 5 C.F.R. § 1201.115(e) provides that the Board nevertheless reserves the authority to consider any issue in an appeal before it.

¶54     Given the agency's assertions from below that it had already provided the appellant with FY 17 performance pay, W-6 AF, Tab 17 at 46 n.13, the absence of any substantive allegation to the contrary from the appellant in her response to that brief or the agency's petition for review, W-6 AF, Tab 22; PFR File, Tab 18, and the administrative judge's apparent misunderstanding about whether the appellant received any FY 17 performance pay, ID at 5, we find it appropriate to consider the agency's newly submitted evidence about this limited issue.

¶55     We credit this newly submitted evidence, which shows that the agency provided the appellant with the same $12,000 in performance pay that it provided other physicians at her facility, albeit belatedly, in July 2018. Although this evidence is notable for some of the reasons described by the agency, we also find it notable for another reason. The agency repeatedly invokes the March 2, 2018 effective date for the appellant's FY 17 performance pay as if it demonstrates that the March 27, 2018 recommendation of no performance pay was too late and meaningless. PFR File, Tab 4 at 31-32 (referencing W-2 AF, Tab 45 at 7). But this ignores the fact that the agency did not process the appellant's FY 17 performance pay award until July 2018. *E.g., id*. at 177, 184-86.[14] By that time,

---

[14] Within the agency's arguments to the Board, it does not assert that the appellant received her performance pay before the March 27, 2018 recommendation of no performance pay. PFR File, Tab 4 at 17. But the agency did so in arguments it

the appellant had engaged in whistleblowing, retained an attorney, and complained to OSC about her FY 17 proficiency report. *E.g.*, IAF, Tab 16 at 56, Tab 17 at 4, Tab 26 at 6. This delay is all the more glaring in light of the agency's acknowledgement that it was "required" to pay the FY 17 performance pay no later than March 2018, PFR File, Tab 4 at 16-17, and evidence showing that other physicians received their performance pay in a timelier manner, *id.* at 308, 310, 313, 318.

¶56        In any event, aside from its argument and evidence about the appellant already receiving $12,000 in FY 17 performance pay, the agency has not substantively disputed the administrative judge's *Carr* factor analysis or conclusion that the agency failed to rebut the appellant's prima facie case of reprisal for Personnel Action 7. Thus, we find no basis for otherwise disturbing that analysis and conclusion. ID at 52-57. We affirm the administrative judge's conclusion that the agency did not meet its burden of proving by clear and convincing evidence that it would have taken Personnel Action 7 in the absence of the appellant's whistleblowing.

¶57        We modify the initial decision regarding the corrective action ordered. The agency is not required to pay the $12,750 in FY 17 performance pay described in the initial decision because it already provided the appellant with the same FY 17 performance pay it provided other physicians at the appellant's facility, albeit belatedly. However, the agency must still ensure that its records consist of the original October 31, 2017 proficiency report and associated performance pay recommendation from November 7, 2017, both of which the agency failed to

_____

submitted to the Equal Employment Opportunity Commission, which the agency attached to its petition for review. *Id.* at 243, 251. The agency argued that "by the time [the appellant's second supervisor] expressed that sentiment with a written recommendation for no Performance Pay on March 27, 2018 [], it was too late. Complainant's Performance Pay had already been paid out more than three weeks earlier." *Id.* at 251. This is contradicted by the agency's own evidence, which shows that the agency did not pay the appellant her FY17 performance pay until July 2018. *Id.* at 177, 184-86.

timely act upon.  The agency must cancel the March 27, 2018 recommendation of no FY 17 performance pay.

<u>The appellant's request for addendum proceedings was premature, and her request for sanctions is denied.</u>

¶58     The initial decision notes that the appellant may request further relief associated with Personnel Action 7 by requesting an addendum proceeding, and that she may request attorney fees.  ID at 62, 66.  The initial decision noted that the time for doing so would be no later than 60 days after the initial decision became final.  *Id*.

¶59     Within her response to the agency's petition for review, the appellant requested addendum proceedings to determine attorneys' fees, damages, and any other relief to which she may be entitled.  PFR File, Tab 18 at 6.  However, this request was premature because the parties filed competing petitions for review and the initial decision was not yet final.  5 C.F.R. §§ 1201.113(a)-(c).  If the appellant still wishes to initiate addendum proceedings for damages and attorney fees, she should file the request with the Denver Field Office after the issuance of this decision.

¶60     Within her response to the agency's petition, the appellant has also asserted that we should sanction the agency for failing to supplement certain responses to interrogatory and document requests over the course of her years-long appeal and for personally attacking the appellant's character.  PFR File, Tab 18 at 7-11.  This request for sanctions is denied.  We have considered the appellant's arguments but discern no reason to exercise Board discretion to impose sanctions in this appeal.

## ORDER

¶61     We ORDER the agency to ensure that its records consist of the original October 31, 2017 proficiency report and associated performance pay recommendation from November 7, 2017, both of which the agency failed to

timely act upon. The agency must cancel the March 27, 2018 recommendation of no FY 17 performance pay. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶62 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶63 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶64 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The

regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no

disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                 *Gina K. Grippando*
                                         _____
                                           Gina K. Grippando
                                           Clerk of the Board

Washington, D.C.



| | |
|---|---|
|  | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.